**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**

No. 22-5222

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA**

_____

TAYLOR BUDOWICH,

*Plaintiff-Appellant*,

v.

NANCY PELOSI, et al.

*Defendants-Appellees*.

_____

On Appeal from a Final Order of the U.S. District Court for the District of
Columbia (No. 21-3366) (Hon. James E. Boasberg, U.S. District Judge)

_____

**MOTION FOR SUMMARY AFFIRMANCE**

Pursuant to D.C. Circuit Rule 27(g), Defendants-Appellees the Honorable

Nancy Pelosi, the Honorable Bennie G. Thompson, the Honorable Elizabeth L.

Cheney, the Honorable Adam B. Schiff, the Honorable Jamie B. Raskin, the

Honorable Susan E. Lofgren, the Honorable Elaine G. Luria, the Honorable Peter

R. Aguilar, the Honorable Stephanie Murphy, the Honorable Adam D. Kinzinger,

1

and the Select Committee to Investigate the January 6th Attack on the United

States Capitol ("Congressional Defendants") respectfully move for summary

affirmance of the district court's June 23, 2022 order dismissing Plaintiff-

Appellant Taylor Budowich's complaint.  *See* Order, ECF 45; Mem. Op., ECF 46

(attached as Ex. 1).

     Summary affirmance is plainly warranted here because the district court's

ruling is based on fully applicable, abundant precedent applying the Constitution's

Speech or Debate Clause.  Moreover, all of the records at issue were provided to

the Congressional Defendants more than nine months ago by Defendant-Appellee

J.P. Morgan Chase Bank, N.A. ("JPMorgan"), and were long ago examined by the

Congressional Defendants.

## FACTUAL BACKGROUND

     On January 6, 2021, rioters seeking to stop the peaceful transfer of power

following the 2020 Presidential election launched a violent assault on the United

States Capitol.  H. Res. 503, 117th Cong. Preamble (2021).  As Plaintiffs described

the event, a large group "entered the U.S. Capitol, breached security, and disrupted

the counting of Electoral College votes until order was restored."  Am. Compl.

¶ 32, ECF 30 (attached as Ex. 2).  "The rampage left multiple people dead, injured

more than 140 people, and inflicted millions of dollars in damage to the Capitol."

*Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021), *inj. denied*, 142 S. Ct. 680

(2022), *cert. denied*, 142 S. Ct. 1350 (2022).  Law enforcement eventually cleared the rioters, which enabled the electoral count to successfully resume later that night after a nearly six-hour delay.

In response to the unprecedented attack, the House of Representatives adopted House Resolution 503, "[e]stablish[ing] the Select Committee to Investigate the January 6th Attack on the United States Capitol."  H. Res. 503 § 1. The resolution authorizes the Select Committee to (1) "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol;" and "relating to the interference with the peaceful transfer of power"; (3) "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures … as it may deem necessary."  *Id.* §§ 3(1), 4(a)(1)-(3).

To carry out those functions, House Resolution 503 provides that "The Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader."  *Id.* § 2(a).  Consistent with the Resolution, the Speaker initially appointed seven Democrats and one Republican and then consulted with the House Minority Leader, who recommended five additional Republicans.  *See* Am. Compl. ¶¶ 41-42.  The Speaker then spoke with the Minority Leader, advised that she would appoint three

3

of the Members he had recommended, and asked the Minority Leader to recommend two other Republicans.[1]  After the Minority Leader declined and, instead, withdrew all five recommendations,[2] the Speaker named an additional Republican to the Select Committee.  *See id*. ¶ 43.  Since then, the Select Committee has functioned with seven Democrats and two Republicans.

In furtherance of its duty to "investigate the facts, circumstances, and causes" of the attack of January 6th, the Select Committee issued subpoenas to certain government agencies, companies, and individuals, including Plaintiff-Appellant Budowich, and Defendant-Appellee JPMorgan.

In a cover letter accompanying the subpoena to Budowich, Chairman Thompson explained that the Select Committee had "credible evidence" of Budowich's "involvement in and knowledge of the events within the scope of the Select Committee's inquiry."  *Id.* Ex. A at 4.  Specifically, Chairman Thompson reported that the Select Committee had "reason to believe" that Budowich had directed $200,000, from a source that was "not disclosed," to pay for an

---

[1]  *See* Press Release, Nancy Pelosi, Speaker, House of Representatives, Pelosi Statement on Republican Recommendations to Serve on the Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol (July 21, 2021), https://perma.cc/B86B-SJTA.

[2]  *See* Press Release, Kevin McCarthy, House of Representatives, McCarthy Statement about Pelosi's Abuse of Power on Jan. 6th Select Committee (July 21, 2021), https://perma.cc/4JNC-73R2.

advertising campaign to encourage people to attend the "Stop the Steal" rally on January 6th in support of then-President Trump and his discredited allegations of election fraud. *Id.* The subpoena to Budowich sought, among other things, records concerning financial transactions relating to the rally. *See id.* at 6-7.

On November 23, 2021, in a separate subpoena issued to JPMorgan, the Select Committee sought certain financial records of Budowich and his business, Conservative Strategies, Inc. *Id.* Ex. B at 5. (While the latter was named as a plaintiff in this case, it has not appealed the district court's ruling.)

In response to the subpoena issued to him personally, Budowich produced 391 documents to the Select Committee. Pls.' Am. Mot. for TRO at 2-3, ECF 14. In a letter accompanying transmission of the documents, Budowich raised general objections, including a claim that the Select Committee was not "duly authorized," and objections based on the First, Fourth, and Fifth Amendments. Am. Compl. Ex. D at 3. Budowich nonetheless agreed to produce "all responsive documents in his possession, custody, or control." *Id.* at 3-5. On December 22, Budowich appeared for a deposition before the Select Committee, where he answered questions concerning "payments made and received regarding his involvement in the planning of" the rally. Am. Compl. ¶ 64.

On December 16, counsel for Budowich wrote JPMorgan to object to the bank's disclosure of any of his bank records "without a warrant." *Id.* Ex. E at 2.

5

On December 21, JPMorgan notified Budowich that it had received a subpoena

from the Select Committee and that it would comply with that subpoena unless it

received "documentation legally obligating it to stop taking such steps." *Id.* Ex. F

at 2. In subsequent correspondence, Budowich's counsel contended that JPMorgan

would be in "willful or intentional" violation of the Right to Financial Privacy Act

if it produced Plaintiffs' bank records. *Id.* Ex. I at 2.

Budowich did not obtain a court order enjoining production, and on

December 24, JPMorgan produced to the Select Committee records responsive to

the subpoena. ECF 14 at 5.

## PROCEDURAL HISTORY

On December 24, 2021, after JPMorgan had already provided the

subpoenaed bank records to the Select Committee, Budowich filed this action and

sought a temporary restraining order to enjoin JPMorgan from producing the

records. *See* Compl., ECF 1; Mot. for TRO, ECF 2. During a December 29

hearing on Budowich's motion, JPMorgan informed the district court that the

documents in question had previously been produced to the Select Committee (a

fact that the Select Committee confirmed). The court therefore denied Budowich's

emergency motion as moot, but did so without prejudice. *See* Minute Order, Dec.

29, 2021.

6

On January 4, 2022, Budowich filed an Amended Emergency Motion for
Temporary Restraining Order, asking the district court to, among other things,
order the Select Committee to "disgorge, promptly return, sequester, or destroy"
the documents that had already been produced by JPMorgan to the Select
Committee.  ECF 14 at 1.

The district court held a hearing on Budowich's new motion for a temporary
restraining order.  Ruling from the bench, the court denied the motion.  Oral Arg.
Tr. at 34, Jan. 20, 2022, ECF 27.

*First*, the court held that it lacked jurisdiction in light of the Speech or
Debate Clause.  The court explained that it could not "order Congress … to return
documents that it has received," that it "does not have the authority to tell Congress
what it can or cannot do with such documents," and that the Speech or Debate
Clause would be a bar to jurisdiction "even if [Plaintiffs] had been able to bring the
case prior to" the document production by JPMorgan.  *Id.* at 32:11-33:16.

*Second*, the district court held in the alternative that, even if it had
jurisdiction, it "would find that the Select Committee has a valid legislative
purpose."  *Id.* at 33:17-22.

*Third*, the district court held that, even if it had jurisdiction, it would reject
Budowich's arguments that the Select Committee was not validly constituted,
because the court must "defer to Congress in the manner of interpreting its rules,"

7

and it would be "usurping Congressional authority" to hold otherwise. *Id.* at 34:1-10.

*Finally*, the court held that, even if it had jurisdiction, it would find that the Select Committee's subpoena is "not overly broad." *Id.* at 34:11-15.

Following that ruling, the parties submitted a Joint Status Report.  In the report, the Congressional Defendants stated that "to their knowledge, they have received all of the financial records requested, and do not anticipate issuing any more subpoenas to Defendant JPMorgan concerning [Budowich]."  ECF 28 at 1. They further represented that "the subpoena does not compel production of more financial records beyond Defendant JPMorgan's production made on December 24, 2021 (except in the unlikely event that responsive records are later discovered that should have been provided at that time)."  *Id.* at 2.

For its part, JPMorgan stated that it "has no present intention to produce additional documents pursuant to the subpoena" and "[t]he possibility that JPMorgan could do so at some point in the future is purely theoretical."  *Id.* Budowich indicated that he intended to move for leave to file an amended complaint and a preliminary injunction request or other appropriate motion.  *Id.* at 4.

Budowich subsequently filed an Amended Complaint.  *See* ECF 30.  Against the Congressional Defendants, the Amended Complaint alleges that the Select

Committee subpoena to JPMorgan was invalid because the Select Committee is not duly authorized (Count I) and lacks a valid legislative purpose (Count II); Defendants violated Plaintiff's procedural due process rights (Count III); Defendants violated the Right to Financial Privacy Act (Count IV); and Defendants violated the First and Fourth Amendments (Counts V and VI). *Id.* at 23-29. The same day, Budowich filed a motion asking the district court to enter an order requiring JPMorgan to provide him with ten days' notice before producing any additional documents to the Select Committee. *See* Mot. to Compel Notice at 2, ECF 31.

The Congressional Defendants moved to dismiss, arguing that the lawsuit could not proceed against them due to the Speech or Debate Clause, that the case was moot because the documents at issue had already been produced by JPMorgan, and that Budowich failed to state a claim. *See* ECF 33. The same day, JPMorgan filed a motion to dismiss, arguing that the court lacked jurisdiction over certain counts and that Budowich failed to state a claim. *See* ECF 34.

On June 23, the district court dismissed Budowich's complaint. The court concluded that the suit against the Congressional Defendants was barred due to the

9

Speech or Debate Clause, and it therefore did not reach the other two grounds for dismissal.  *See* Ex. 1 at 8-15.[3]

The court held that, because the Speech or Debate Clause applies to all "legislative acts," *id.* at 9 (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)), it "plainly immunizes the Congressional Defendants from all six of the claims against them, given that each challenge arises from a legislative act," *id.*  The court determined that the Select Committee's investigation is "related to and in furtherance of a legitimate task of Congress," Ex. 1 at 10 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 505 (1975)).  The court further concluded that, because House Resolution 503 "empowered the [Select] Committee to investigate how 'technology' and 'financing' 'may have factored into the motivation, organization, and execution of the domestic terrorist attack on the Capitol,'" Ex. 1 at 11 (quoting H. Res. 503 § 4(a)(1)(B)), the Select Committee "validly made Budowich 'a subject of the investigation and subpoena,'" *id.* at 11-12 (quoting *Eastland*, 421 U.S. at 506).

The district court noted that the fact that the subpoenaed documents had already been produced to the Select Committee "makes the Court's decision even

---

[3] The court also dismissed the claims against JPMorgan for mootness and failure to state a claim.  Ex. 1 at 15-38.

easier," because this Court's precedent holds that the Speech or Debate Clause prohibits courts from ordering a Congressional committee to return documents that have been produced. *Id.* at 12 (citing *Senate Permanent Subcommittee on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017)).

The court rejected four counterarguments by Budowich. *First*, the court rejected an argument that the Speech or Debate Clause does not apply by virtue of Budowich's allegation that Congressional Defendants committed "unlawful acts." Ex. 1 at 13 (quoting Mem. in Opp. to Mot. to Dismiss at 24, ECF 38). *Second*, the court rejected Budowich's contention that the Speech or Debate Clause did not apply because the subpoena lacked a legitimate legislative purpose. *See id. Third*, the court rejected Budowich's assertion that the Speech or Debate Clause is not a jurisdictional bar to suit. *See id.* at 14. *Fourth*, the court rejected the argument that Congress waived its Speech or Debate Clause immunity in the Right to Financial Privacy Act. *See id.* at 14-15.

On August 22, Budowich appealed to this Court. ECF 47.

## ARGUMENT

This Court may summarily dispose of an appeal where "[t]he merits of the parties' positions are so clear as to warrant summary action," *Hassan v. FEC*, No. 12-5335, 2013 WL 1164506, at *1 (D.C. Cir. Mar. 11, 2013) (per curiam), and "no benefit will be gained from further briefing and argument of the issues presented."

11

*Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 298 (D.C. Cir. 1987) (per curiam); *see also Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985). This is such an appeal.  The district court applied well-settled Speech or Debate Clause precedent from this Court and the Supreme Court to dismiss Budowich's complaint, and there would be no benefit to further briefing or argument.

The Speech or Debate Clause (U.S. Const., Art. I, § 6, cl. 1) plainly bars Budowich's suit.  That Clause provides absolute immunity to Members of Congress and committees for all "legislative acts."  *Doe*, 412 U.S. at 312.  That immunity is not merely a defense.  Rather—as the district court held, Ex. 1 at 14— because the Select Committee's issuance of the subpoena to JPMorgan pursuant to House Resolution 503 is plainly a legislative act, the Clause "operates as a jurisdictional bar."  *Howard v. Off. of Chief Admin. Officer of U.S. House of Reps.*, 720 F.3d 939, 941 (D.C. Cir. 2013).

By "freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct," *Gravel v. United States*, 408 U.S. 606, 618 (1972), the Clause both "preserve[s] the independence and … integrity of the legislative process," *United States v. Brewster*, 408 U.S. 501, 524 (1972), and "reinforc[es] the separation of powers," *Eastland*, 421 U.S. at 502.  It also prevents litigation that would "divert [legislators'] time, energy, and attention from their legislative tasks," *id*. at 503, or lessen their ability "to represent the interests of

their constituents," *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (internal quotation marks and citation omitted).

"[I]t is long settled that the Clause's protections range beyond just the acts of speaking and debating." *McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022). Indeed, the "Supreme Court has consistently read the Speech or Debate Clause 'broadly' to achieve its purposes." *Rangel*, 785 F.3d at 23 (quoting *Eastland*, 421 U.S. at 501). To that end, courts have routinely applied this immunity to bar suits challenging "legislative acts," *Doe*, 412 U.S. at 311-12, which are those that are "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *see Gravel*, 408 U.S. at 624. The protections of the Clause extend not only to Congress, but to its committees as well. *See, e.g.*, *Eastland*, 421 U.S. at 501; *McSurely v. McClellan*, 521 F.2d 1024, 1036-37 (D.C. Cir. 1975); *Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations of U.S. House of Reps.*, 20 F. Supp. 2d 41, 43-45 (D.D.C. 1998). Speech or Debate immunity shields all acts that "occur in the regular course of the legislative process," *Brewster*, 408 U.S. at 525, and it bars Budowich's suit.

The Select Committee's subpoena to JPMorgan fits squarely within the Clause's protections. As this Court recently reaffirmed, "[i]ssuance of subpoenas … has long been held to be a legitimate use by Congress of its power to

investigate." *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (citations omitted).  Courts have long recognized that "[t]he power to investigate and to do so through compulsory process plainly falls within" the legislative sphere, *Eastland*, 421 U.S. at 504, because "legislative activities" include "authorizing an investigation pursuant to which … materials were gathered." *McMillan*, 412 U.S. at 313.

As the Supreme Court has explained, investigations and subpoenas are "indispensable ingredient[s] of lawmaking."  *Eastland*, 421 U.S. at 505.  "Without information, Congress would be shooting in the dark, unable to legislate 'wisely or effectively.'"  *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *see also Eastland*, 421 U.S. at 504 ("[A] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.").

The House voted to create the Select Committee to investigate what this Court has called "the most significant assault on the Capitol since the War of 1812."  *Trump v. Thompson*, 20 F.4th at 18-19.  The Select Committee seeks to learn as much as possible about what led to, and occurred during, the acts of domestic terrorism aimed at Congress itself, in order to prevent any such future acts of violence against any branch of the United States Government.  The Select

14

Committee's authority is consistent with that charter, which includes customary investigatory powers such as the ability to issue subpoenas. *See* H. Res. 503, § 5(c)(4); *see also* Rule XI.2(m)(1)(B), Rules of the U.S. House of Representatives, 117th Cong. (2021) ("House Rules"). Moreover, the Select Committee is authorized to issue a final report, including recommendations for legislation. *See* H. Res. 503, § 4(a)(3). Accordingly, the Select Committee's activities manifestly reside in the "legislative sphere."

As the district court correctly concluded, Budowich's arguments about the Select Committee's formation, its adherence to the House Rules, and the purportedly "unique" allegations in this case—that is, allegations that the Select Committee "intentionally thwarted an individual's right to seek review of a congressional subpoena that is patently unconstitutional and *ultra vires*," ECF 38 at 24—have no bearing on whether Budowich's suit is barred by the Speech or Debate Clause (and are wrong on the merits). Far from being unique, similar arguments are "made in almost every Speech or Debate Clause case" and have "been rejected time and again." *Rangel*, 785 F.3d at 24. The Clause prevents a court from exercising jurisdiction when "a plaintiff alleges that [the act] violated the House Rules … or even the Constitution." *Id.* (citing *Kilbourn*, 103 U.S. at 203, and *McMillan*, 412 U.S. at 312-13). "Such is the nature of absolute immunity, which is—in a word—absolute." *Id.*

15

Furthermore, as the district court correctly held, the Speech or Debate

Clause prevents a federal court from granting the relief Budowich seeks: ordering a

Congressional committee to return materials in its possession. *See Senate*

*Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017).

In *Ferrer*, this Court rejected a plaintiff's demand that a Congressional committee

return documents produced in response to a subpoena. As the court explained, "the

separation of powers, including the Speech or Debate Clause, bars this court from

ordering a congressional committee to return, destroy, or refrain from publishing

the subpoenaed documents" because the Clause "affords Congress a privilege to

use materials in its possession without judicial interference." *Id.* at 1086 (internal

quotation marks omitted).

This Court's ruling in *Ferrer* followed substantial other precedent from this

Circuit. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416

(D.C. Cir. 1995) (applying a similar analysis even where (unlike here) the plaintiff

alleged that Members of Congress acquired documents illegally, and explaining

that the Speech or Debate Clause "permits Congress to conduct investigations and

obtain information without interference from the courts"); *Hearst v. Black*, 87 F.2d

68, 71-72 (D.C. Cir. 1936) ("If a court could say to the Congress that it could use

or could not use information in its possession, the independence of the Legislature

16

would be destroyed and the constitutional separation of the powers of government invaded.").

As the district court here held, Budowich wrongly asserted that, for Speech or Debate protections to apply, courts must conduct a searching inquiry for a "valid legislative purpose." ECF 38 at 24. That argument misreads the Supreme Court's decision in *Eastland* and ignores this Court's precedent. The Supreme Court explained in *Eastland* that "once it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." 421 U.S. at 503 (citation omitted). Accordingly, the scope of the Supreme Court's inquiry in *Eastland* was "narrow." *Id.* at 506. As the Court put it, "[i]f the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Id.* at 508-09. Thus, because Congress "was authorized to investigate any subject 'on which legislation could be had,' . . . its issuance of subpoenas necessarily fell within the legislative sphere." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d at 416 (quoting *Eastland*, 421 U.S. at 504 n.15)).

As the district court noted, *see* Ex. 1 at 13, this Court recently applied these principles in *Judicial Watch v. Schiff*, rejecting the argument that a Congressional committee's subpoenas "served no legitimate legislative purpose and were

17

therefore unprotected by the Speech or Debate Clause." 998 F.3d at 992 (internal quotation marks and citation omitted). The Court explained that "[t]he wisdom of congressional approach or methodology is not open to judicial veto," "[n]or is the legitimacy of a congressional inquiry to be defined by what it produces." *Id.* (quoting *Eastland*, 421 U.S. at 509). Here, the Select Committee's investigation and subpoena easily fall within the "legislative sphere": the Select Committee is investigating an attack on Congress itself, and its authorizing resolution includes customary investigatory powers such as the ability to issue subpoenas. *See* H. Res. 503, § 5(c)(4); *see also* House Rule XI.2(m)(1)(B). As in *Eastland* and *Judicial Watch*, the Speech or Debate Clause provides "complete immunity" for the Select Committee's "issuance of th[e] subpoena." *Eastland*, 421 U.S. at 507.

Finally, the district court correctly rejected Plaintiff's contention that the Right to Financial Privacy Act waives Speech or Debate Clause immunity. No court has held that Speech or Debate Clause immunity is waivable. To be sure, a Congressional entity may choose not to assert its Speech or Debate immunity in a given case, but that is far different from saying that Congress has implicitly waived its immunity as to an entire category of litigation. *See Ferrer*, 856 F.3d at 1085-87 (rejecting argument that by "seeking to enlist the judiciary's assistance in enforcing its subpoena," the Senate subcommittee had "necessarily accepted an implicit restriction on the Speech or Debate Clause"). Even "[a]ssuming" that waiver of

18

Congressional immunity is "possible," it "can be found only after explicit and unequivocal renunciation of the protection." *United States v. Helstoski*, 442 U.S. 477, 490-91 (1979). As the district court noted, "Plaintiffs have not even attempted to identify in the RFPA an 'explicit and unequivocal renunciation' of the Clause's protection, nor could they." Ex. 1 at 15 (citation omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should summarily affirm the judgment of the district court.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter
Todd B. Tatelman
Eric R. Columbus

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for the Congressional Defendants-Appellees*

October 3, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that this

Motion complies with the type-volume limitation of Rule 27(d)(2), as it contains

4,006 words.


                                         */s/ Douglas N. Letter*
                                         Douglas N. Letter

October 3, 2022

## CERTIFICATE OF SERVICE

I certify that on October 3, 2022, I filed one copy of the foregoing Motion for Summary Affirmance via the CM/ECF system of the United States Court of Appeals for the District of Columbia Circuit, which I understand caused service on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter