**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 22-5222**

# In the United States Court of Appeals for the District of Columbia Circuit

---

TAYLOR BUDOWICH
PLAINTIFF-APPELLANT

and

CONSERVATIVE STRATEGIES, INC.,
PLAINTIFF

*v.*

NANCY PELOSI, IN HER OFFICIAL CAPACITY AS SPEAKER OF THE UNITED
STATES HOUSE OF REPRESENTATIVES, ET AL.
DEFENDANTS-APPELLEES

and

J.P. MORGAN CHASE BANK, N.A.,
DEFENDANT-APPELLEE

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA (CIV. NO. 21-3366)*
*(THE HONORABLE JAMES E. BOASBERG, J.)*

---

**MOTION FOR SUMMARY AFFIRMANCE**
**OF APPELLEE J.P. MORGAN CHASE BANK, N.A.**

---

ROBERTO J. GONZALEZ
MATTEO GODI
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*

LORETTA E. LYNCH
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*
*(212) 373-3000*

# TABLE OF CONTENTS

Page

Statement of jurisdiction..........................................................................1

Statement of the case ...............................................................................1

    A.    Background.............................................................................2

    B.    Procedural history .................................................................4

Summary of argument ..............................................................................8

Standard of review....................................................................................8

Argument ..................................................................................................9

I.    The district court correctly dismissed the constitutional and non-statutory federal claims against Chase....................................9

    A.    The constitutional claims and non-statutory federal claims are moot.................................................................9

    B.    Budowich failed to state any constitutional claim because Chase is not a state actor ...................................13

II.    The district court correctly dismissed the RFPA claim because that statute does not apply to congressional subpoenas........................14

III.    The district court correctly dismissed Budowich's claims under California law...........................................................................17

    A.    Budowich failed to allege any egregious breach of social norms in violation of the California Constitution ..........................18

    B.    Budowich failed to allege any unlawful or unfair conduct on the part of Chase in violation of the California Unfair Competition Law..........................................................................22

Conclusion...............................................................................................24

# TABLE OF AUTHORITIES

Page

## CASES

*American Academy of Pediatrics* v. *Lungren*,
    940 P.2d 797 (Cal. 1997) ................................................................19

*Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ........................................................................11

*United States* v. *Bormes*,
    568 U.S. 6 (2012) ............................................................................16

*Brentwood Academy* v. *Tennessee Secondary School Athletic Association*,
    531 U.S. 288 (2001) ........................................................................14

*Cascade Broadcasting Group Ltd.* v. *F.C.C.*,
    822 F.2d 1172 (D.C. Cir. 1987) ...................................................9, 12

*Chafin* v. *Chafin*,
    568 U.S. 165 (2013) ........................................................................10

*Committee on Judiciary* v. *McGahn*,
    415 F. Supp. 3d 148 (D.D.C. 2019), *aff'd in relevant part*,
    968 F.3d 755 (D.C. Cir. 2020) .......................................................20

*Correctional Services Corp.* v. *Malesko*,
    534 U.S. 61 (2001) ..........................................................................11

*Crooker* v. *U.S. State Department*,
    628 F.2d 9 (D.C. Cir. 1980) ...........................................................10

*Eastland* v. *United States Servicemen's Fund*,
    421 U.S. 491 (1975) ........................................................................21

*Grafilo* v. *Wolfsohn*,
    245 Cal. Rptr. 3d 564 (Cal. App. 2019) .........................................19

Cases—continued:                                                       Page

*Hernandez* v. *Hillsides, Inc.*,
    211 P.3d 1063 (Cal. 2009) ......................................................18, 19, 20

*Hubbard* v. *United States*,
    514 U.S. 695 (1995)................................................................17

*J.T.* v. *District of Columbia*,
    983 F.3d 516 (D.C. Cir. 2020)....................................................12

*Jeffrey H.* v. *Imai, Tadlock & Keeney*,
    101 Cal. Rptr. 2d 916 (Cal. App. 2000) ..........................................19

*Lugar* v. *Edmonson Oil Co.*,
    457 U.S. 922 (1982)................................................................13

*McGrain* v. *Daugherty*,
    273 U.S. 135 (1927)................................................................21

*Ralls Corp.* v. *Committee on Foreign Investment*,
    758 F.3d 296 (D.C. Cir. 2014)....................................................12

*Republican National Committee* v. *Pelosi*,
    2022 WL 4349778 (D.C. Cir. Sept. 16, 2022)..................................11

*Sanchez* v. *Office of State Superintendent of Education*,
    45 F.4th 388 (D.C. Cir. 2022) ....................................................8

*Shaeffer* v. *Califia Farms, LLC*,
    258 Cal. Rptr. 3d 270 (Cal. App. 2020) ..........................................23

*Skinner* v. *Railway Labor Executives' Association*,
    489 U.S. 602 (1989)................................................................13

*Taxpayers Watchdog, Inc.* v. *Stanley*,
    819 F.2d 294 (D.C. Cir. 1987)..................................................9, 22

*Trump* v. *Deutsche Bank AG*,
    943 F.3d 627 (2d Cir. 2019) ..........................................7, 15, 16, 17

Cases—continued:                                                              Page

*Watkins* v. *United States*,
    354 U.S. 178 (1957).................................................................21, 24

## STATUTES

2 U.S.C. § 192 ...........................................................................23

12 U.S.C. § 3401(3)...................................................................15

12 U.S.C. § 3403(a)...................................................................15

15 U.S.C. 6803(f) .......................................................................23

15 U.S.C. § 6802(e)(8) ...............................................................23

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

Cal. Bus. & Prof. Code § 17200 ........................................2, 6, 8, 18, 22

Cal. Fin. Code § 4050................................................................14, 23

Cal. Fin. Code § 4056(b)(7) .......................................................23

## STATUTES

U.S. Const. amend. I................................................................4, 6, 9, 13

U.S. Const. amend. IV..............................................................4, 6, 9, 13

U.S. Const. amend. V................................................................6, 9, 13

H.R. Res. 503, 117th Cong. .......................................................3

Cal. Const. art I.......................................................................6, 7, 18, 22

iv

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. The district court entered final judgment on June 23, 2022. Appellant filed a notice of appeal on August 22, 2022. The jurisdiction of this Court rests on 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

This is a straightforward case. Appellant Taylor Budowich, the plaintiff below, produced documents in response to a facially valid subpoena issued by the House Select Committee to Investigate the January 6th Attack on the United States Capitol. So did appellee JPMorgan Chase Bank, one of the defendants below, after it received a subpoena from that same committee concerning Budowich and Conservative Strategies, Inc., for which Budowich is listed as Chief Executive Officer. Before producing any documents, Chase voluntarily notified Budowich of the subpoena. After the Select Committee denied Budowich's request for an extension of Chase's deadline to comply, Chase produced the requested documents on pain of contempt. Budowich and Conservative Strategies then filed this lawsuit against Chase, the Speaker of the House of Representatives, and the Select Committee and its members.

The district court correctly dismissed the complaint for myriad jurisdictional and pleading defects. For instance, Budowich's claims that Chase

(1)

violated the United States Constitution, and that the Select Committee and its investigation are invalid, are moot because Chase has already produced the documents required by the subpoena. In any event, Budowich's constitutional claims fail as a matter of law, because the act of complying with a subpoena does not convert a private actor such as Chase into a state actor. Budowich's federal statutory claim under the Right to Financial Privacy Act fares no better: by its plain terms, the Act does not apply to congressional inquiries. And Budowich's remaining state law claims fail because Budowich cannot show that Chase's compliance with a facially valid subpoena amounts to an "egregious breach" of social norms that is "highly offensive" or is otherwise unfair or unlawful under the California Constitution and the state's Unfair Competition Law.

As the district court's well-reasoned opinion shows, the meritless nature of Budowich's appeal is so clear that further briefing and oral argument are unnecessary. Accordingly, this Court should summarily affirm the district court's order dismissing Budowich's complaint.

### A.    Background

In 2021, the House of Representatives established the Select Committee to Investigate the January 6th Attack on the United States Capitol. *See* H.R.

2

Res. 503, 117th Cong. § 1.  As part of its investigation, the Select Committee issued subpoenas to Chase, *see* Dkt. 30-2, and its customer, Taylor Budowich, *see* Dkt. 30-1.[1]  The subpoena to Budowich stated that the Committee had "reason to believe" that he had directed "approximately $200,000 from a source or sources that was not disclosed" to pay for an "advertising campaign to encourage people to attend the rally held on the Ellipse in Washington, D.C. on January 6, 2021."  Dkt. 30-1, at 4.  The subpoena to Chase required the production of financial records relating to Budowich and Conservative Strategies, Inc. *See* Dkt. 30-2.

For his part, Budowich timely complied with the subpoena from the Select Committee, which required the production of documents and testimony. *See* Dkt. 30-4.  Budowich provided the Select Committee with 440 documents, including records related to his financial accounts and the Ellipse rally.  *Id.*

Before producing any financial records, Chase voluntarily provided notice of the subpoena to Budowich.  *See* Dkt. 30-6.  Chase also informed Budowich that it would comply with the subpoena, as it was required to do by law, unless it received documentation that legally obligated it to refrain from

---

[1] Unless otherwise noted, all record citations are to the district court docket, No. 21-cv-3366.

doing so. *Id.* Even though Budowich had already complied with the Select Committee's subpoena, he objected to Chase doing the same and requested that the Select Committee extend Chase's deadline to comply. *See* Dkt. 30-9. The Select Committee denied Budowich's request. *See* Am. Compl., Dkt. 30, ¶ 72. On pain of contempt, Chase produced the subpoenaed documents by the deadline. *Id.* ¶ 73.

> **B.     Procedural History**

1.     On December 24, 2021, after Chase made its production to the Select Committee, Budowich and Conservative Strategies, Inc., filed a complaint and a motion for a temporary restraining order in the United States District Court for the District of Columbia against Chase, the Speaker of the House of Representatives, and the Select Committee and its members. *See* Dkt. 1, 2. With respect to Chase, the complaint claimed that the bank's compliance with the Select Committee's subpoena would violate the Right to Financial Privacy Act (RFPA) and the First and Fourth Amendments to the United States Constitution. *See* Dkt. 1, ¶¶ 75-94. The district court denied the motion as moot because Chase had already produced the records. *See* Minute Entry (Dec. 29, 2021).

On January 4, 2022, plaintiffs filed an amended motion for a temporary restraining order and a preliminary injunction. *See* Dkt. 14. Plaintiffs requested that the Select Committee "disgorge, promptly return, sequester, or destroy private financial records belonging to [them]." *Id.* The district court denied the motion, concluding that it did not have jurisdiction to consider an injunction against Congress to return records that were already in its possession. *See* Minute Entry (Jan. 20, 2022); *see also* TRO Tr., Dkt. 27, at 33:9-12.

On February 3, 2022, the parties submitted a joint status report. In that report, the Select Committee made clear that it had "received all of the financial records requested" and did not "anticipate issuing any more subpoenas" to Chase concerning Budowich or Conservative Strategies. *See* Dkt. 28, at 1. For its part, Chase represented that it had "no present intention to produce additional documents pursuant to the subpoena." *Id.* at 2.

On February 18, 2022, plaintiffs filed an amended complaint, asserting new claims against Chase under federal and California law. *See* Dkt. 30. That is the operative complaint for purposes of this appeal. The complaint first alleged that the subpoena to Chase was invalid because the Select Committee was not duly authorized and did not have a valid legislative purpose (Counts I and II). It also alleged that Chase's compliance with the subpoena violated the

First, Fourth, and Fifth Amendments to the United States Constitution (Counts III, V, and VI).  Next, the complaint alleged that Chase had violated the RFPA in producing records pursuant to the subpoena (Count IV).  Finally, the complaint asserted violations of the California Constitution and California's Unfair Competition Law (Counts VII, VIII, and IX).

2.     On March 25, 2022, both the Select Committee (Dkt. 33) and Chase (Dkt. 34) filed motions to dismiss the amended complaint for lack of jurisdiction and for failure to state a claim.  On June 23, 2022, the district court granted the motions.  *See* Dkt. 45, 46.  The district court grouped the claims against Chase into three categories.

With respect to the first category, the claims about the Select Committee's composition and those under the United States Constitution, the district court agreed with Chase that those claims were mooted by Chase's compliance with the subpoena.  The court concluded that "intervening events" had made "it impossible to grant the prevailing party effective relief."  Op. 17.  The court also determined that Budowich and Conservative Strategies had not demonstrated that any exception to the mootness doctrine applied.  Op. 19-20.  In the alternative, the court held that plaintiffs had failed to state a constitutional claim upon which relief could be granted, because state action is a required

element to plead a constitutional violation and Chase is not a state actor. Op. 21-22.

With respect to the second category, the claim about the RFPA, the court concluded that "the RFPA, by its terms, simply does not apply to congressional subpoenas" because Congress is not included within the statute's definition of a "Government authority," which means "any agency or department of the United States." Op. 22 (quoting 12 U.S.C. § 3401(3)). In reaching that conclusion, the district court was "guided by the Second Circuit's lengthy examination of the same issue" in *Trump* v. *Deutsche Bank AG*, 943 F.3d 627 (2d Cir. 2019), *vacated and remanded on other grounds*, 140 S. Ct. 2019 (2020). *See* Op. 23.

Finally, with respect to the third category, the state law claims, the court held that the claim for invasion of privacy under the California Constitution and the unfair competition claim both failed under California law. The court agreed with Chase that "[a]ny intrusion upon Budowich's reasonable privacy expectations" resulting from Chase's compliance with the subpoena was "neither highly offensive nor so serious as to constitute an egregious breach of the social norms." Op. 28. Finally, Chase's compliance with a facially valid

congressional subpoena was neither unlawful nor unfair under the California Unfair Competition Law.  Op. 32-34.

Budowich noticed this appeal; Conservative Strategies did not appeal.

## SUMMARY OF ARGUMENT

The meritless nature of this appeal is so clear that further briefing and oral argument would be of no benefit.  This Court should summarily affirm the dismissal of Budowich's three sets of claims.  *First*, Budowich's non-statutory federal claims for injunctive relief should be dismissed either because they are moot or because they fail to state a claim.  *Second*, Budowich's claim under the RFPA fails because that statute does *not* apply to a congressional subpoena. *Third*, Budowich's invocation of California law falls short of making out an actionable claim.  For those reasons, this Court should summarily affirm the district court's order dismissing Budowich's amended complaint.

## STANDARD OF REVIEW

The Court reviews the dismissal of a complaint de novo.  *See Sanchez* v. *Office of State Superintendent of Education*, 45 F.4th 388, 395 (D.C. Cir. 2022). Summary affirmance is appropriate where "no benefit will be gained from further briefing and argument of the issues presented."  *Taxpayers Watchdog*,

*Inc.* v. *Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987); *see also Cascade Broadcasting Group Ltd.* v. *F.C.C.*, 822 F.2d 1172, 1174 (D.C. Cir. 1987).

## ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY DISMISSED THE CONSTITUTIONAL AND NON-STATUTORY FEDERAL CLAIMS AGAINST CHASE

Because Chase has already complied with the Select Committee's subpoena, Budowich's claims that Chase violated the First, Fourth, and Fifth Amendments (Counts III, V, and VI), and that the Select Committee was not duly authorized and lacked a legislative purpose (Counts I and II), are moot. Budowich's constitutional claims also fail for an additional, alternative reason: Chase is not a state actor, and thus no relief could be granted on those claims. Affirmance of the dismissal of those claims is plainly warranted.

### A.   The Constitutional Claims and Non-Statutory Federal Claims Are Moot

Budowich's claims that Chase's compliance with the subpoena violated the United States Constitution, and that the subpoena was invalid, are moot. *See* Op. 16-20.  The district court correctly rejected Budowich's arguments that those claims are not moot and that they involve actions that are "capable of repetition yet evading review."

9

1.      Because Chase has already produced the records responsive to the Select Committee's subpoena, Budowich's claims for injunctive relief are moot. It is a familiar principle that a claim "becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). And when a dispute concerns the production of records, it necessarily follows that, "[o]nce the records are produced[,] the substance of the controversy disappears and becomes moot." *Crooker* v. *U.S. State Department*, 628 F.2d 9, 10 (D.C. Cir. 1980). Here, it is "uncontroverted" that Chase has already complied with the subpoena and produced the records at issue. Op. 17; *see also* Dkt. 30, ¶ 73. And Chase has expressly represented that it has no present intention to produce additional documents pursuant to the subpoena. Dkt. 28, at 1-2. As a result, a court cannot validly grant the injunctive relief that Budowich seeks.

2.      Below, Budowich made a series of arguments in support of the opposite conclusion. Those arguments lack merit.

*First*, Budowich argued that his claims are not moot because he is challenging an "ongoing policy" of the Select Committee—that is, "the Select Committee's issuance of unnoticed, overbroad subpoenas." Dkt. 39, at 8. But a challenge to the *Select Committee's* general policies bears no relation to

Budowich's claims against *Chase*, which seek relief only for the bank's past compliance with a facially valid subpoena. *See* Op. 18. In any event, the Select Committee has disavowed any plan to issue another subpoena to Chase for records concerning Budowich. *See* Dkt. 28, at 1-2. And as this Court has recently explained, the Select Committee's representations that it will not seek additional records moot any appeal challenging the constitutionality of a subpoena—regardless of the Select Committee's alleged broader policies. *See Republican National Committee* v. *Pelosi*, No. 22-5123, 2022 WL 4349778, at *1 (D.C. Cir. Sept. 16, 2022) (per curiam).

*Second*, Budowich contended that a finding of mootness is precluded by his purported request for damages. *See* Dkt. 39, at 8. But while Budowich sought monetary relief on his RFPA and California law claims, he did not do so on his constitutional and non-statutory federal claims. *See* Op. 17; Dkt. 30, at 36-37. That is for a good reason: a private entity cannot be held liable for damages under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), even when that entity acts under color of federal law. *See Correctional Services Corp.* v. *Malesko*, 534 U.S. 61, 63 (2001).

*Third*, Budowich argued that this case falls within the narrow "capable of repetition yet evading review" exception. Dkt. 39, at 9-12. But even

11

assuming that Budowich met his burden of showing that the subpoena was "in its duration too short to be fully litigated prior to its cessation," he failed to show that "there is a reasonable expectation" that he will be "subjected to the same action again." *Ralls Corp.* v. *Committee on Foreign Investment*, 758 F.3d 296, 321 (D.C. Cir. 2014) (citation and alteration omitted).  Budowich's speculation that "it is likely" that the Select Committee will issue subpoenas to unnamed "additional third-parties," Dkt. 39, at 10, has no bearing on his claims against Chase.  The salient question is whether "*the same parties* will engage in litigation over *the same issues* in the future." *J.T.* v. *District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (citation omitted) (emphases added).  Here, the answer is no:  the Select Committee has stated that it has no plan to issue further subpoenas to Chase concerning Budowich, and Chase has stated that it has no plan to produce any additional documents pursuant to the subpoena at issue.  Dkt. 28, at 1-2.

In short, Budowich's constitutional and non-statutory federal claims are "clear[ly]" moot.  *Cascade*, 822 F.2d at 1174.  No exception could plausibly apply.  This Court should therefore affirm the dismissal of Counts I, II, III, V, and VI against Chase.

### B. Budowich Failed To State Any Constitutional Claim Because Chase Is Not a State Actor

Budowich's claims that Chase violated the First, Fourth, and Fifth Amendments also fail as a matter of law. That is because Budowich did not allege that Chase's challenged conduct—compliance with a subpoena—was "state action" under any potential formulation of the state action requirement. That provides an alternative ground for affirmance of the dismissal of those claims.

Chase, a private banking institution, is plainly not a state actor. In claims brought to vindicate constitutional rights, "the party charged with the deprivation must be a person who may fairly be said to be a state actor," *Lugar* v. *Edmonson Oil Co.*, 457 U.S. 922, 937 (1982), and state action "necessarily turns on the degree of the [g]overnment's participation in the private party's activities," *Skinner* v. *Railway Labor Executives' Association*, 489 U.S. 602, 614 (1989). As the district court noted, several factors are traditionally considered in determining whether state action is present, including "the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." Op. 20 (internal quotation marks and citation

13

omitted).  At bottom, the central constitutional inquiry is whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy* v. *Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted).

Chase simply does not fit that definition.  Courts have routinely concluded that banks are not state actors. *See* Op. 21 (listing cases).  Moreover, with respect to compliance with subpoenas in particular, a "sweeping holding" that parties that comply with subpoenas become state actors would have preposterous consequences, because it would "force subpoena recipients to choose between facing penalties (perhaps including contempt and criminal prosecution) for non-compliance or being sued for constitutional violations."  Op. 22.  The district court correctly declined to endorse Budowich's unprecedented state action theory.  Affirmance on that alternative ground is proper.

## II.   THE DISTRICT COURT CORRECTLY DISMISSED THE RFPA CLAIM BECAUSE THAT STATUTE DOES NOT APPLY TO CONGRESSIONAL SUBPOENAS

Budowich's next claim invokes the Right to Financial Privacy Act (Count IV).  By its terms, however, the RFPA only applies to requests for financial information made by an "agency or department of the United States."

14

12 U.S.C. § 3401(3). That language plainly does not reach a congressional sub-poena. The district court's dismissal of that claim should also be affirmed.

1.    Congress is not covered by the RFPA. The RFPA states that "[n]o financial institution . . . may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer" except in certain enumerated circumstances, 12 U.S.C. § 3403(a), and it defines "Government authority" as "any agency or depart-ment of the United States, or any officer, employee, or agent thereof," 12 U.S.C. § 3401(3). But neither "agency" nor "department" can be under-stood to cover Congress, as opposed to a component of the Executive Branch. Op. 23. The Second Circuit recently addressed that question squarely, reach-ing the same conclusion that the district court reached in this case: Congress is not covered. *See Trump* v. *Deutsche Bank AG*, 943 F.3d 627, 641-645 (2d Cir. 2019), *vacated and remanded on other grounds*, 140 S. Ct. 2019 (2020); *see also id.* at 677 ("The majority and [the dissent] are in agreement" that the RFPA "does not apply to Congress.") (Livingston, J., concurring in part and dissenting in part). That conclusion was correct for three reasons.

*First*, the plain meaning of the phrase "agency or department of the United States" in the RFPA does not encompass Congress or its committees.

15

Contemporaneous dictionary definitions make clear that both "department" and "agency" refer to executive or administrative entities. *See Deutsche Bank*, 943 F.3d at 641; Op. 23-24.

Second, the statutory context confirms that Congress did not intend to subject itself to the RFPA. *See* Op. 23-24. For example, the statute refers to requests for financial records that are "authorized by regulations," but Congress does not promulgate regulations. *Deutsche Bank*, 943 F.3d at 642 (quoting 12 U.S.C. § 3408(2)). The RFPA also includes a civil penalty provision, but it is "highly unlikely" that Congress "would have subjected itself to such penalties, especially in the absence of a clear indication of an intent to do so." *Id.* (citing 12 U.S.C. § 3417(a)); *see also United States* v. *Bormes*, 568 U.S. 6, 9-10 (2012). And the RFPA directs the Office of Personnel Management to determine whether disciplinary action is warranted, but that Office oversees Executive Branch employees—not Congress. *See Deutsche Bank*, 943 F.3d at 642 (citing 12 U.S.C. § 3417(b)).

Third, the legislative history shows that Congress, when considering the RFPA, rejected draft language submitted by the Departments of Justice and the Treasury that would have added Congress to the definition of "Government authority." *Deutsche Bank*, 943 F.3d at 642 & n.25. As the Second

16

Circuit observed, that omission "is strong evidence of a deliberate decision by Congress not to apply the [RFPA] to itself." *Id.* at 643.

2. Budowich's contrary arguments lack merit. Budowich suggested that courts have occasionally referred to the "legislative department" in different contexts. *See* Dkt. 39, at 18 (citing cases). But the fact that courts have occasionally referred to branches of government as "departments" gives little guidance as to what *Congress* meant when it enacted the RFPA. More importantly, Budowich overlooked the Supreme Court's admonition in *Hubbard* v. *United States*, 514 U.S. 695 (1995), that describing each branch of government as a "department" is not "ordinary parlance," and "[f]ar more common is the use of 'department' to refer to a component of the Executive Branch." *Id.* at 699; *accord Deutsche Bank*, 943 F.3d at 645; Op. 26. In short, the language of the RFPA is unmistakably clear: it does not cover requests for financial information made by committees of Congress. The dismissal of the RFPA claim should also be affirmed.

## III. THE DISTRICT COURT CORRECTLY DISMISSED BUDOWICH'S CLAIMS UNDER CALIFORNIA LAW

Budowich also failed to allege actionable claims under the California Constitution (Count VII) and the California Unfair Competition Law (Counts VIII and IX). That is because Budowich's allegations do not rise to the level

of conduct that is so serious to amount to an egregious breach of social norms in violation of the constitutional right to privacy. Nor do they involve any predicate violation of federal or state law or any conduct by Chase that was immoral, unethical, or in violation of public policy. Budowich's contrary arguments lack merit. The dismissal of those claims should also be affirmed.

### A.    Budowich Failed To Allege Any Egregious Breach Of Social Norms In Violation Of The California Constitution

Chase's compliance with a facially valid congressional subpoena does not give rise to a claim for invasion of privacy under Article I of the California Constitution. Under California law, Budowich must allege that he (1) "possess[es] a legally protected privacy interest" and (2) maintains a "reasonable expectation[] of privacy," and that (3) any alleged intrusion is "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive." *Hernandez* v. *Hillsides, Inc.*, 211 P.3d 1063, 1073-1074 (Cal. 2009) (citation omitted). If those elements are met, courts must then "balanc[e] the privacy interest at stake and the seriousness of the threatened invasion with the strength of legitimate and important countervailing interests." *Grafilo* v. *Wolfsohn*, 245 Cal. Rptr. 3d 564, 571-572 (Cal. App. 2019). Even assuming that Budowich has plausibly alleged the first two elements, compliance with a congressional subpoena does not amount to an egregious

18

breach of social norms.  Nor could any alleged invasion of privacy outweigh the important countervailing interests at issue here.

The circumstances surrounding Chase's production of financial records pursuant to the subpoena strongly counter the notion that any invasion of privacy was "highly offensive."  For example, considering the "degree and setting" of the intrusion, *Hernandez*, 211 P.3d at 1079, "[w]hile Budowich's financial records are no doubt ordinarily private, he has not persuasively explained how his bank's sharing portions of them in response to a valid subpoena constitutes an egregious breach of social norms."  Op. 29.  Indeed, the circumstances here fall far short of any case in which California courts have found an egregious breach of social norms.  *See, e.g.*, *American Academy of Pediatrics* v. *Lungren*, 940 P.2d 797, 831 (Cal. 1997) (requiring a pregnant minor to secure parental consent or judicial authorization before obtaining an abortion); *Jeffrey H.* v. *Imai, Tadlock & Keeney*, 101 Cal. Rptr. 2d 916, 922 (Cal. App. 2000) (release of hospital records disclosing plaintiff's HIV status during arbitration).

Looking at Chase's "motives and objectives" further supports the conclusion that producing records pursuant to a facially valid subpoena is not an unconstitutional invasion of privacy.  *Hernandez*, 211 P.3d at 1079.  "Simply

put, a subpoena is a written mandate . . . that creates a legally enforceable procedural obligation to produce or provide documents or testimony." *Committee on Judiciary* v. *McGahn*, 415 F. Supp. 3d 148, 166 (D.D.C. 2019), *aff'd in relevant part*, 968 F.3d 755 (D.C. Cir. 2020). All that Chase did was comply with a legal obligation to do the same thing that Budowich did: turn over documents to the Select Committee. And Chase went further and voluntarily notified Budowich of the subpoena. As the district court held, *see* Op. 29-30, there is simply no well-pleaded allegation that compliance with a congressional subpoena is an "egregious breach" of social norms that is "highly offensive."

Even if the Court were to proceed to the balancing test, Budowich's claims would still fail. *See* Op. 37-38. Chase's compliance with the Select Committee's subpoena unquestionably involved legitimate and important interests. Congress's authority to issue subpoenas is an "indispensable ingredient" of its legislative power, *Eastland* v. *United States Servicemen's Fund*, 421 U.S. 491, 505 (1975), for "the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function," *McGrain* v. *Daugherty*, 273 U.S. 135, 174 (1927). And it is "unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action." *Watkins* v. *United States*, 354 U.S. 178, 187

(1957).  In short, even assuming that Budowich had plausibly alleged all of the elements of an invasion-of-privacy claim (and he did not), the complaint would still fail to allege any facts sufficient to survive the ensuing balancing test.

Budowich's contrary arguments are unavailing.  Budowich asserted below that it was inappropriate to dismiss this claim at the pleading stage, but California courts routinely do just that where plaintiffs fail to adequately allege a sufficient intrusion.  *See* Op. 31 (discussing cases).  Moreover, while Budowich argued that Chase somehow planned to send its voluntary notice while Budowich was out of town, that allegation is not contained in the complaint.  And, in any event, it would not give rise to a valid claim given that Chase had no obligation to notify Budowich of the subpoena in the first place.  *See* Op. 30.

In short, as a matter of law, Chase's compliance with the Select Committee's facially valid subpoena does not rise to the level of an egregious breach of social norms, and "no benefit will be gained from further briefing" of this issue.  *Taxpayers Watchdog*, 819 F.2d at 298.  The district court's dismissal of the claim under the California Constitution was clearly correct.

21

**B.     Budowich Failed To Allege Any Unlawful Or Unfair Conduct On The Part Of Chase In Violation Of The California Unfair Competition Law**

Budowich's final two counts invoke the California Unfair Competition Law, which prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200 et seq.  But the complaint does not plausibly allege that Chase violated the Unfair Competition Law's "unlawful" prong (Count VIII), nor that there was a separate violation of the "unfair" prong (Count IX).  Here, too, Budowich's efforts to resist dismissal are fruitless.  The dismissal of those claims should also be affirmed.

Budowich's complaint fails under any theory of liability pursuant to the Unfair Competition Law.

*First*, Budowich's complaint did not plead *any* predicate violation of any federal or California law that could support liability under the "unlawful" prong.  *See* Op. 32.  To meet that prong, Budowich had to plead a predicate violation of federal or California "statute or regulation."  *Shaeffer* v. *Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 277 (Cal. App. 2020).  In the district court, Budowich raised the theory that Chase's document production contravened two statutes.  That theory lacks merit.  *See* Op. 33-35.  By its terms, the

22

California Financial Information Privacy Act does not apply to the release of information "to comply with federal  .  .  .  and other applicable legal requirements," or "to comply with a properly authorized civil, criminal, administrative, or regulatory investigation or subpoena or summons by federal, state, or local authorities."  Cal. Fin. Code § 4056(b)(7).  And the federal Gramm-Leach-Bliley Act is subject to similar exceptions.  *See* 15 U.S.C. § 6802(e)(8).  Of course, Chase produced the records pursuant to a congressional subpoena, and noncompliance with such a subpoena is a federal crime.  *See* 2 U.S.C. § 192.  In other words, Chase's compliance with the subpoena is exempted from both of the statutes that Budowich invoked below.

*Second*, Budowich provided no basis whatsoever to support the suggestion that compliance with a facially valid congressional subpoena is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" so as to meet the "unfair" prong.  *See* Op. 36.  His arguments boiled down to the suggestion that it was unfair for Chase not to provide Budowich with greater (voluntary) notice of the Select Committee's subpoena.  *See* Dkt. 39, at 37-38.  But, while financial institutions are not obligated to provide notice to their customers of congressional subpoenas, they are "unquestionably" obligated "to respond to subpoenas, to respect the dignity of the Congress and its

23

committees." *Watkins*, 354 U.S. at 187.  And even Budowich acknowledged that Chase complied with a facially valid congressional subpoena.  *See* TRO Tr., Dkt. 27, at 8:15-17.  Under California law, the "unfair" prong is met only where the conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and is not outweighed by the "utility of the defendant's conduct."  Op. 36 (citation omitted).  The district court was clearly correct that this test cannot be met here, because Chase's compliance with the subpoena was *not* immoral or unethical and, regardless, its utility outweighed any alleged injury to Budowich.  In this respect, as in all others, the district court's dismissal of Budowich's claims was plainly correct.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Loretta E. Lynch
LORETTA E. LYNCH
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*
  *(212) 373-3000*

ROBERTO J. GONZALEZ
MATTEO GODI
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*

OCTOBER 3, 2022

24

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Loretta E. Lynch, counsel for Appellee JPMorgan Chase Bank, N.A., and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1), that the attached Motion for Summary Affirmance is proportionately spaced, has a typeface of 14 points or more, and contains 4,924 words.

/s/ Loretta E. Lynch
LORETTA E. LYNCH
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
 *1285 Avenue of the Americas*
 *New York, NY 10019*
 *(212) 373-3000*

OCTOBER 3, 2022

## CERTIFICATE OF SERVICE

I, Loretta E. Lynch, counsel for Appellee JPMorgan Chase Bank, N.A., and a member of the Bar of this Court, certify that, on October 3, 2022, a copy of the attached Motion for Summary Affirmance was filed with the Clerk through the Court's electronic filing system, which sent notice to all counsel of record.

/s/ Loretta E. Lynch
LORETTA E. LYNCH
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
 *1285 Avenue of the Americas*
 *New York, NY 10019*
 *(212) 373-3000*

OCTOBER 3, 2022